**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO.: 21-cr-20259-RNS**

UNITED STATES OF AMERICA

v.

RENE PEDROSA,

     Defendant.

_____/

## <u>OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT</u>

The Defendant, **RENE PEDROSA**, by and through undersigned counsel, respectfully submits the following Objections to the Presentence Investigation Report [DE #171].

**I.**    <u>**OBJECTIONS TO PSI**</u>

<u>**Paragraph 16:**</u> This paragraph attributes statements to Mr. Pedrosa he adamantly denies making. Mr. Pedrosa is openly gay and never claimed to be married to a woman or to having a child, much less a 21 year old son.

<u>**Paragraph 34**</u>: The Defendant, Rene Pedrosa objects to this paragraph as it mischaracterizes the evidence. The government gave the photographs at issue to Dr. Walter Lambert, a pediatrician. Dr. Lambert was unable to determine the age of the subjects of the photographs and expressed to the government that he would not be able to testify regarding the age of the subjects without further examination.

<u>**Paragraph 35**</u>: The defendant, Rene Pedrosa, objects to this paragraph as it fails to provide or describe the pornographic videos allegedly accessed by him.

<u>**Paragraph 39-43**</u>: The Defendant, Rene Pedrosa objects to an order of restitution. Section 3664(j) permits a court to reduce an earlier restitution order by any amounts that the victim later

receives in the course of related federal or state civil litigation.  The victim in this case received a settlement from the City of Miami for $100,000.00.  (*See* settlement documents attached hereto as Exhibit 1).  Additionally, paragraph 42 of the Pre-Sentence Investigation Report indicates the victim is not seeking restitution.

**Paragraph 46**:  The Defendant objects to the Offense Level Computation as set forth in the Presentence Investigation Report.  The applicable guideline for a violation of the offense of conviction, §2252(a) is found in §2G2.2 of the Guideline Manual.  The only permissible use of §2G2.1 is for an offense that involved causing, transporting, permitting or offering or seeking by notice or advertisement, a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct.  Mr. Pedrosa did not engage in any of the conduct covered by §2G2.1.

The Eleventh Circuit has limited the use of 2G2.1 in cases where the Defendant admitted to said conduct in the factual proffer, *Vanaman v. United States*, 2017 U.S. App. LEXIS 28793, 2017 WL 11684637, where the Defendant bragged to a third party about how he convinced the victim to send pictures of herself  and  that he prompted and coaxed the victim to engage in sexual conduct with a woman, *United States v. Whitesell*, 314 F.3d 1251, 2002 U.S. App. LEXIS 25970, 16 Fla. L. Weekly Fed. C 121 and where the Defendant "used his fingers to spread apart the victim's genitalia" and took pictures, *United States v. Taylor*, 736 Fed. Appx. 216, 2018 U.S. App. LEXIS 14521, 2018 WL 2446572.

This circuit has also allowed for this enhancement where the defendant requested live performance child pornography videos from others on an internet chat room. The court concluded these actions could be expected to induce them to make such videos, and that conduct met the definition of seeking, by notice or advertisement. The cross reference applies to the active

solicitation of child pornography, and asking someone to take pictures of children engaged in sexual acts is seeking, by notice or advertisement under § 2G2.2(c)(1). *United States v. Murphy*, 755 Fed. Appx. 941, 942, 2018 U.S. App. LEXIS 32826, *1, 2018 WL 6068443. *See also*, See *United States v. Hite*, 769 F.3d 1154, 1162, 413 U.S. App. D.C. 66 (D.C. Cir. 2014) , finding that offering to send pornographic videos in exchange for a live, sexually explicit webcam performance by a 12-year-old girl, the defendant demonstrated his intent to "**caus**[e] . . . a minor to engage in sexually explicit conduct for the purpose of . . . transmitting a live visual depiction of such conduct." And by actually sending such videos to the minor's purported custodian, the Defendant took a "substantial step" toward **causing** this result.), *See also*, *United States v. Bohannon*, 476 F.3d 1246, 1252, 2007 U.S. App. LEXIS 2236, *14, 20 Fla. L. Weekly Fed. C 277, where the defendant had a digital camera in his car, as well as a history of photographing his sexual encounters.  In that case, the district court reviewed a government exhibit that catalogued a variety of defendant's computer files including numerous photographs he had taken of sexual encounters with women. The district court was careful to note that the mere presence of the camera itself would not have been sufficient but that the camera, in concert with the evidence of the defendant's propensity to take pictures of his sexual encounters, enabled the government to meet its burden.

In the instant case, the minor victim was one month shy of his 17th birthday when he engaged in the chats at issue with the Defendant.  The minor victim was a willing participant in the chat.  Mr. Pedrosa did not *cause* the minor victim to engage in the sexually explicit conduct at issue nor did Mr. Pedrosa engage in any of the conduct required under §2G2.1.  While the chats between Mr. Pedrosa and the minor victim are sexual in nature, the chats, in their entirety demonstrate the minor victim's willingness to participate in the conversations and later on, his

objection to any future engagement in conduct of this type.  The minor victim was not hindered from expressing his objections and Mr. Pedrosa did not attempt to persuade him otherwise once those objections were raised.  This request for a change to his guideline calculation should not be construed as an attempt to blame the minor victim for Mr. Pedrosa's actions, it is merely an assertion his guideline range should not be calculated under §2G2.1

**Paragraph 49**:  The Defendant objects to this enhancement increasing the Defendant's offense level by two levels because the minor was in the custody, care or supervisory control of the Defendant.  In General. Subsection (b)(5) is intended to have broad application and includes offenses involving a minor entrusted to the defendant, whether temporarily or permanently. For example, teachers, day care providers, baby-sitters, or other temporary caretakers are among those who would be subject to this enhancement. In determining whether to apply this adjustment, the court should look to the actual relationship that existed between the defendant and the minor and not simply to the legal status of the defendant-minor relationship.  The 11th Circuit has limited the use of this enhancement to situations where the defendant was the minor victim's stepfather, _United States v. Holt_, 408 Fed. Appx. 229, and where the defendant was the minor's youth pastor, _United States v. Mobley_, 711 Fed. Appx. 547.  Other circuits have overruled the objection where the defendant and minor victim were related, _United States v. Lester_, 985 F.3d 377 and where the defendant had previously babysat the minor victim.  _United States v. Caudill_, 427 Fed. Appx. 301.  The working relationship between the Defendant and the minor victim is not specifically contemplated under §2G2.1(b)(5).

**Paragraph 50**:  To suggest that in today's day and age the use of a computer is a "specific" offense characteristic is intellectually dishonest. Even at the time of this enhancement's initial inclusion in the guidelines, the Sentencing Commission warned about its application.  In a 1996

Report to Congress, after being directed to include the enhancement, the Commission cautioned about the enhancements use stating "[n]ot all computer use is equal ….. sentencing policy should be sensitive to the differences in culpability so that punishments are tailored to fit the circumstances of each individual case." United States Sentencing Commission, Report to the Congress:  Sex Offenses Against Children "(1996). https://www.ussc.gov/research/congressional-reports/1996-report-congress-sex-offenses-against-children.

**Paragraph 55**:  Defendant objects to this Chapter Four Enhancement. The PSR indicates a score of 43 on paragraph 55.  The Defendant assumes that this is a typographical error, and the points assessed should be 5 points, which the Defendant also objects to.

§4B1.5 is titled Repeat and Dangerous Sex Offenders Against Minors.  Subsection (b), which is referenced in the PSI specifically requires that the "defendant's instant offense of conviction is a **covered sex crime** . . . and the defendant engaged in a pattern of activity involving **prohibited sexual conduct**."  §4B1.5(b).

The commentary portion of §4B1.5 (comment. 2. Covered Sex Crime as Instant Offense Conviction) outlines what is a "covered sex crime," which states:

> For purposes of this guideline, the instant offense of conviction must be a covered sex crime, i.e. . . . (ii) chapter 110 of such title, **not including** trafficking in, **receipt of, or possession of, child pornography**, or a recordkeeping offense. . . . (Emphasis added.)

The Defendant has plead solely to Count IV on this case, Receipt of Child Pornography.  Receipt of Child Pornography falls under 18 U.S. Code Chapter 110, §2252(a)(2) and (b)(1).  This specific crime is excluded as a covered sex crime by the United States Sentencing Commission Guidelines.

Moreover, the Defendant's conviction does not apply under the definition of "prohibited sexual conduct." §4B1.5 (comment. 4. Application of Subsection (b)), which states that, "**prohibited sexual conduct" . . . . does not include receipt or possession of child pornography**." (Emphasis added).

As such, under the United States Sentencing Commission Guidelines, it is inappropriate to assess any points to the Defendant under Chapter Four Enhancements because the crime is not a "covered sex crime" and the Defendant's conduct does not fall under "prohibited sexual conduct." Therefore, no points should be assessed.

Despite Mr. Pedrosa's specific objections, he recognizes and is extremely remorseful for the actions that bring him before the Court.

### <u>CERTIFICATE OF SERVICE</u>

**IT IS HEREBY CERTIFIED** that a true and correct copy has been electronically filed with the Clerk of the Court utilizing the CM/ECF system on this 25th day of July 2023.

Respectfully submitted,

| | |
|---|---|
| **SUSY RIBERO-AYALA, P.A.** | **LAW OFFICE OF RICK YABOR, P.A.** |
| 121 Alhambra Plaza – Suite 1500 | 10689 North Kendall Drive – Suite 307 |
| Coral Gables, Florida 33134 | Miami, FL 33176 |
| Telephone:(305) 854-4711 | Office (305) 760-2277 |
| sra@ralawmiami.com | Email:  rick.yabor@yaborlaw.com |
| | |
| BY: /s/ *Susy Ribero-Ayala* | BY: /s/ *Rick Yabor* |
| **SUSY RIBERO-AYALA** | **RICK L. YABOR** |
| Florida Bar No. 993352 | Florida Bar No: 191019 |

# EXHIBIT 1





Victoria Méndez
City Attorney

Telephone: (305) 416-1800
Telecopier: (305) 400-5071
E-MAIL: Law@miamigov.com

March 10, 2021

<u>Via FedEx 707210532</u>

John Elliott Leighton, Esq.
Leighton Law, P.A.
1401 Brickell Ave
Suite 900
Miami, FL 33131-3503

RE:   Claims of ▊; D/A: 11/25/19
      Matter #20-535

Dear Mr. Leighton:

Please find enclosed for the City of Miami, Check No. 55110 in the amount of **One Hundred Thousand Dollars and 00/100 ($100,000.00)** in full and final settlement of the claims of ▊ asserted against the City of Miami in the above-referenced claim.

Thank you.

Sincerely,

*Christopher A. Green*

Christopher A. Green
Senior Assistant City Attorney
cag@miamigov.com

## GENERAL RELEASE OF ALL CLAIMS

THIS INDENTURE WITNESSETH that in consideration of the payment to ▇ (DOB: ▇▇▇▇; SSN:▇▇▇▇▇▇)(the "RELEASOR") of the sum of ONE HUNDRED THOUSAND AND NO/100 DOLLARS ($100,000.00), receipt whereof is hereby acknowledged, I, ▇, for myself and for my heirs, personal representatives and assigns, release and forever discharge the **CITY OF MIAMI**, its current and former departments, agencies, instrumentalities, officers, agents, servants, and employees, and their respective heirs, representatives and assigns (collectively the "RELEASEES"), from any and all claims, demands, or causes of action (including attorney's fees and costs), arising from any act or occurrence from the beginning of time through the present, and particularly including, but not limited to, all claims which were asserted, or could have been asserted, as a result of an incident which allegedly occurred on November 25, 2019 at City Hall, 3500 Pan American Drive, Miami, Florida, 33133, in addition to any claims which could have been asserted concerning the hiring, retention, or supervision of RENE PEDROSA, and any claims relating to requests for records made pursuant to Chapter 119 of the Florida Statutes by myself or counsel while investigating this matter. This release does not release Rene Pedrosa individually.

To procure payment of the said sum, the RELEASOR hereby declares and covenants as follows:

(1).     That the RELEASOR is more than 18 years of age and has not been influenced in any manner, or to any extent, in making this Release by any representations or statements regarding damages, or regarding any other matters, by the RELEASEES, or by any person or attorney(s) representing them, or any of them individually, or by anyone employed by them;

(2).     That the injury, disease or illness, if any, sustained by RELEASOR, as the proximate result of the aforesaid incident, may be permanent, progressive, or not fully known to RELEASOR at this time, and that recovery therefrom may be uncertain and indefinite, and in making this Release, ▇ relies wholly upon the advice of ▇ attorney, and upon ▇ own individual judgment, belief and knowledge of the nature, extent and duration of said injuries, illness or disease, and all damages arising therefrom;

(3).     That RELEASOR has had the benefit of counsel of his/her own attorney(s), and that he/she fully understand the terms of this Release, and that he/she is making full and final settlement of all claims of every nature and character against the RELEASEES;

(4).     That there are no unpaid obligations incurred and owing by RELEASOR, to any hospital or medical care provider for services, medicines, medical appliances, rehabilitation, X-rays, or diagnostic tests of any kind, rendered or incurred as a result of the incident described herein;

(5).     That there is no outstanding attorney's lien in connection with the sum paid herein to the RELEASOR;

(6).     That no claim has been made by RELEASOR, against any person, firm or corporation as an alleged employer under the Workers Compensation laws of the State of Florida,

**General Release of All Claims**
**Page 1 of 3**

any other state, or the federal government, in connection with the said incident which would give rise to a lien against the proceeds of this settlement, which lien has not been satisfied or released by RELEASOR; nor have any medical services of doctors, nurses, hospitals or other institutions of any kind, drugs, medicines, etc., been furnished to RELEASOR by any such employer in connection with the said incident, which would give rise to a lien against the proceeds of this settlement, which lien has not been satisfied or released;

(7).     That this Release is made to induce the said RELEASEES, and those making payment for, or on behalf of, said RELEASEES, to settle with RELEASOR, and to pay said sum of moneys to RELEASOR without securing any of the following (which, if they exist, have been fully satisfied or released):

(A).     Any release or satisfaction of lien of any funeral home, hospital or medical care provider in the State of Florida, or any other state or territory of the United States;

(B).     Any release or satisfaction of lien of any hospital of the United States Government, including Veterans Hospitals, Naval Hospitals, or Military Hospitals;

(C).     Any release or satisfaction of lien of any employer, or insurance carrier of any employer, for benefits, services, medical and otherwise, paid by virtue of the Workers' Compensation Law of the State of Florida, any other state or territory of the United States, or the federal government;

(D).     Any release or satisfaction of any lien of any insurance carrier for benefits and services, medical or otherwise, paid by virtue of the Florida Motor Vehicle No-Fault Law, or any other insurance policy, auto, life or otherwise;

(E).     Any release of lien from any attorney; and

in the event any such lien, or liens, described above not be satisfied, released, or otherwise extinguished, THE RELEASOR SPECIFICALLY UNDERTAKES AND AGREES TO INDEMNIFY, HOLD HARMLESS AND DEFEND the said RELEASEES, from any action or claim asserting such liens against the RELEASEES, including all losses, costs, expenses, judgments and attorney's fees incurred as a result of the assertion thereof:

(8).     That this Release contains the entire agreement between the parties hereto and the terms of this Release are contractual and not a mere recital;

(9).     That RELEASOR hereby specifically waives, extinguishes and discharges the subrogation rights (as to the RELEASEES only) of any insurance carrier arising under any policy of insurance for benefits paid to RELEASOR, even though RELEASOR may be contractually prohibited from doing so by said policies of insurance; and, should the holder of any subrogation right proceed against any or all of said RELEASEES, RELEASOR SPECIFICALLY UNDERTAKES AND AGREE TO INDEMNIFY, HOLD HARMLESS AND DEFEND the said RELEASEES, from all such claims, demands, etc., including all losses, costs, expenses, judgments and attorney's fees incurred as a result thereof; and



**General Release of All Claims**
**Page 2 of 3**

(10).   RELEASOR hereby agrees that, as a further consideration and inducement, this Release shall apply to all unknown and unanticipated injuries and damages resulting from said incident, casualty or event, as well as to those now disclosed.

(11).   RELEASOR understands that the RELEASEES admit no liability of any sort by reason of said incident and that said payment and settlement provided for herein in compromise is made to terminate further controversy respecting all claims for damages that RELEASOR has heretofore asserted or that RELEASOR, or his personal representative(s), might or could hereafter assert because of the said incident.

SIGNED AND SEALED this 9th day of March, 2021.

STATE OF FLORIDA          )
                          ) SS:
COUNTY OF MIAMI-DADE   )

2021. The foregoing instrument was acknowledged before me this 9th day of March, 2007, by _____ who is personally known to me or who has produced FL Driver's LIC as identification and who did/did not take an oath.

My Commission Expires: 4|18|23

Signature of Notary Public
State of Florida



Jessica Weimer

Type, Print or Stamp Name of Notary Public

JESSICA WEIMER
Notary Public - State of Florida
Commission # GG 325362
My Comm. Expires Apr 18, 2023
Bonded through National Notary Assn.

**General Release of All Claims**
**Page 3 of 3**